**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| Mathis v. Planet Home Lending, LLC (In re: Planet Home Lending, LLC Data Breach) | Case No. 3:24-cv-127 (KAD) |
|---|---|

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiffs, Brandon Mathis, Nashira Williams, Jamie Lee Mazzo, Jeffrey Benson, Frank Canepa, William Ekola, Joe Ward, Antonio Cole, and Ramsey Coulter, on behalf of the Settlement Class[1], respectfully submit this Unopposed Motion for Preliminary Approval of Class Action Settlement, granting Preliminary Approval; approving the Notice Program, Notices, Claim Form, and Claim process; appointing the Class Representatives and Class Counsel; and setting the Final Approval Hearing date and time.

## I.    INTRODUCTION

This Action arises from a Data Incident that Plaintiffs allege compromised the Personal Information of approximately 285,000 individuals. Under the proposed Settlement, which is memorialized in the Agreement and associated exhibits, Defendant Planet Home Lending, LLC ("PHL") will create a $2,425,000.00 non-reversionary cash Settlement Fund for the benefit of the Settlement Class and is providing injunctive relief in the form of security measures PHL is implementing following the Data Incident.

The Settlement presented for the Court's consideration is fair, reasonable, and adequate. After deduction of any Court-awarded attorneys' fees and costs, Service Awards, and Settlement

---

[1] All capitalized terms herein shall have the same meaning as those defined in Section II of the Settlement Agreement and Releases attached as ***Exhibit A***.

Administration Costs, Settlement Class Members who submit Valid Claims will receive significant consideration, including Cash Payment reimbursements for costs and lost time incurred as a result of the Data Incident. Plaintiffs and proposed Class Counsel reached the Settlement with PHL following arm's length negotiations before an experienced data breach mediator, Hon. Diane M. Welsh (Ret.) of JAMS. Class Counsel have considerable experience in data breach litigation and are keenly aware of the strengths and weaknesses of litigating the Action. Notwithstanding their confidence in the merits of their claims, Plaintiffs recognize the challenges and risks inherent in litigation, trial, and appeals, including certification of any class, and PHL's various defenses as to standing, liability, and other affirmative defenses. The Settlement will also avoid further delay in providing relief to the Settlement Class and expensive and protracted litigation with uncertain results. In exchange for the above-referenced consideration, Plaintiffs and all Settlement Class Members will release PHL and the other Released Parties from the claims in the Action. Accordingly, Plaintiffs respectfully request this Court preliminarily approve the Settlement.

## II.    BACKGROUND

### a.    The Data Incident

PHL is a Connecticut-based mortgage company that services customers across the United States. *See* SA § I(1). In operating its business, PHL collects, maintains, and stores Personal Information pertaining to its customers, including, but not limited to, full names, addresses, Social Security numbers, loan numbers, and financial information. *Id*.

On or about November 15, 2023, PHL noticed suspicious activity on its network and, in response, launched an investigation revealing that a cybercriminal organization accessed borrower and co-borrowers' Personal Information. SA § I(2). When PHL became aware of the Data Incident, outside advisors and cybersecurity experts assisted in the evaluation of the Data Incident, and law

enforcement was notified. SA § I(3). PHL thereafter notified approximately 285,000 individuals that their Personal Information may have been impacted by the Data Incident. *Id.*

### b.    Plaintiffs' Consolidated Complaint

As a result, on January 31, 2024, Plaintiff Mathis filed a Class Action Complaint, *Mathis v. Planet Home Lending, LLC*, Case No. 3:24-cv-127 (D. Conn.), against PHL, seeking to represent a nationwide class of aggrieved individuals and asserting causes of action for: (1) negligence; (2) negligence *per se*; (3) breach of implied contract; (4) unjust enrichment; and (5) declaratory judgment. [DE #1].

Following the filing of *Mathis*, PHL was named a defendant in five other putative class actions filed in the District of Connecticut[2] and two putative class actions filed in state and federal court in Florida[3] that are materially and substantively identical, as they have overlapping claims, seek to represent the same putative Settlement Class members, and arise out of the same Data Incident. PHL, at all material times, denies any wrongdoing and disputes the allegations in this Action and the Related Actions.

On February 8, 2024, Plaintiffs in the Related Actions filed an Unopposed Motion and Incorporated Memorandum of Law in Support of their Motion for Consolidation of the *Mathis* and the Related Actions and for Appointment of Co-Interim Lead Counsel. [DE #11]. On February 29,

---

[2] *Mathis v. Planet Home Lending, LLC*, Case No. 3:24-cv-127 (filed on January 31, 2024); *Mazzo v. Planet Home Lending, LLC*, Case No. 3:24-cv-130 (filed on February 1, 2024); *Benson v. Planet Home Lending, LLC*, Case No. 3:24-cv-131 (February 1, 2024); *Canepa v. Planet Home Lending, LLC*, Case No. 3:24-cv-145 (February 2, 2024); *Ekola v. Planet Home Lending, LLC*, Case No. 3:24-cv-145 (filed on February 5, 2024); and *Ward v. Planet Home Lending, LLC*, Case No. 3:24-cv-00158 (filed on February 6, 2024).
[3] *Cole v. Planet Home Lending, LLC*, Case No. 24-cv-60269 (S.D. Fla.; filed on Feb. 6, 2024); and *Coulter v. Planet Home Lending, LLC*, Case No. 2024000019 (Madison Cty.; filed on Feb. 17, 2024). *Coulter* was subsequently removed to federal court on March 18, 2024. *Coulter v. Planet Home Lending, LLC*, Case No. 24-cv-130 (N.D. Fla). *Cole* voluntarily dismissed on April 5, 2024, and *Coulter* was voluntarily dismissed on April 9, 2024.

2024, the Court held a scheduling conference to discuss Plaintiffs' pending motions and other housekeeping issues. On March 1, 2024, the Court granted the Motion to Consolidate and Motion to Appoint Interim Class Counsel. [DE #26].

On April 1, 2024, Plaintiffs filed a Consolidated Complaint, which is the current, operative complaint. [DE # 33]. Plaintiffs allege that the Data Incident put them at risk of imminent, immediate, and continuing risk of harm from fraud and identity theft. *Id*. They also allege that they, and other Settlement Class members, were forced to spend time dealing with the effects of the Data Incident and have or may incur out-of-pocket costs in the form of bank fees or the cost of credit monitoring services directly or indirectly related to the Data Incident. *Id*.

### c.    History of Negotiations and Settlement

Shortly after the Court granted consolidation, the Parties began discussing settlement and scheduled a mediation for March 29, 2024. In advance of the mediation, the Plaintiffs propounded informal discovery requests on PHL to which PHL responded by providing information related to, among other things, the nature and cause of the Data Incident, the number and geographic location of victims impacted by the Data Incident, and the specific types of information breached. The Parties also exchanged mediation statements in advance of the mediation. SA § I(9).

On March 29, 2024, the Parties reached agreement on the material terms of the settlement following a full day of arms' length negotiation and mediation with the Hon. Diane M. Welsh (Ret.) from JAMS. *Id.* § I(10). The Parties agreed to settle the Action entirely, without any admission of liability or wrongdoing, with respect to all Released Claims of the Releasing Parties and to recover on the claims asserted in the Complaint, thus avoiding the risk, delay, and uncertainty of continued litigation. *Id.* § I(13).

### III.    SUMMARY OF SETTLEMENT

#### a.    Settlement Class Member Benefits

The settlement negotiated on behalf of the Class provides for a non-reversionary Settlement Fund of US $2,425,000.00 to pay for: (1) Service Awards to Class Representatives awarded by the Court, (2) attorneys' fees and costs awarded by the Court to Class Counsel, (3) all Settlement Administration Costs, and (4) Settlement Class Member Benefits to Settlement Class Members. *Id.* § III(34), (59). The Settlement Agreement provides for two types of Cash Payments in addition to injunctive relief in the form of security measures PHL is implementing following the Data Incident. *Id.* § III(67)-(70).

The Settlement Class is defined as:

> All living individuals residing in the United States who were sent a notice by PHL that their Personal Information may have been impacted in the Data Incident.

*Id.* § II(56). Excluded from the Settlement Class are (a) all persons who are employees, directors, officers, and agents of PHL; (b) governmental entities; and (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff. *Id.*

The Settlement Class includes approximately 285,000 individuals. See Joint Declaration of Class Counsel ("Joint Decl.") ¶ 12, attached hereto as ***Exhibit B***.

#### i.    *Cash Payments*

Under the terms of the Settlement, Settlement Class Members may choose either Cash Payment A or Cash Payment B. Cash Payments will be subject to a *pro rata* increase from the Net Settlement Fund in the event the amount of Valid Claims is insufficient to exhaust the entire Net Settlement Fund. Similarly, in the event the amount of Valid Claims exhausts the amount of the Net Settlement Fund, the amount of the Cash Payments may be reduced *pro rata* accordingly. Any *pro rata* increases or decreases to Cash Payments will be on an equal percentage basis. SA § V(67).

a. <u>Cash Payment A</u>

Cash Payment A provides for compensation for: (1) documented, unreimbursed ordinary losses fairly traceable to the Data Incident, up to a total of $1,500.00 per person; (2) attested lost time spent remedying issues related to the Data Incident of $25.00 per hour up to five hours (a total of $125.00); and (3) extraordinary losses, up to a total of $10,000.00, per Settlement Class Member, for actual, documented, and unreimbursed monetary losses due to fraud or identity theft fairly traceable to the Data Incident. *Id.* § V(68).

b. <u>Cash Payment B</u>

Instead of selecting Cash Payment A, a Settlement Class Member may elect to receive Cash Payment B, which is a flat payment in the amount of $100.00. *Id.* § V(69).

### ii.    *Injunctive Relief*

PHL provided Class Counsel with a "Security Attestation" attesting to the security measures it is implementing following the Data Incident. PHL confirms that all of these security measures have been implemented. The costs of any such security measures on the part of PHL shall be fully borne by PHL, and under no circumstances will such costs be deducted from the Settlement Fund. *Id.* § V(70).

### b.    The Releases

The Releases are tailored to the claims "relating to the Data Incident," i.e., that have been pled or could have been pled in this Action. Settlement Class Members who do not opt-out of Settlement will release all claims, whether known or unknown, against PHL and its affiliates, that relate to the Data Incident. *Id.* § XIII(103).

c.    **The Notice and Claim Process**

i.    *Notice*

The Parties agreed to use Epiq Class Action Claims & Solutions as the Settlement Administrator in this Action. *Id.* § II(54).  The Settlement Administrator shall administer various aspects of the Settlement under the supervision of the Parties' counsel. *Id.* §§ VII(73)-(74).

The Notice Program provides that within 45 days of entry of the Preliminary Approval Order, Email Notice will be sent to Settlement Class members, or Postcard Notice will be sent to the last postal or electronic mail address that PHL has on record for each Settlement Class member. *Id.* § VIII(77). Where an e-mail address is not known, the Settlement Administrator will send a Postcard Notice to the last known mailing address. *Id.* The Settlement Administrator will also perform reasonable address traces for undeliverable Postcard Notices. *Id.* § VIII(83).

The Email Notice and Postcard Notice shall include, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for Settlement Class members to opt-out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. *Id.* § VIII(78).

The Long Form Notice also shall include a procedure for Settlement Class members to opt-out of the Settlement Class, and the Postcard Notice shall direct Settlement Class members to review the Long Form Notice to obtain the opt-out instructions. *Id.* § VIII(80). The Long Form Notice also shall include a procedure for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards, and the Postcard Notice and

Email Notice shall direct Settlement Class members to review the Long Form Notice to obtain the objection instructions. *Id.* § VIII(81).

### ii.    Claims

The timing of the Claims process is structured to ensure that all Settlement Class members have adequate time to review the terms of the Agreement, compile documents supporting their Claim, and decide whether they would like to opt-out or object. Joint Decl. ¶ 20. Settlement Class members must submit their Claim Form to the Settlement Administrator by the Claim Form Deadline, which is 90 days from the date that Notice is first disseminated to the Settlement Class, either by mail or online. SA §§ II(15), IX(86). The Claim Form is written in plain language to facilitate ease in completion. *Id.,* Ex. 4. The Settlement Administrator will review the Claim Forms and determine if they are complete and valid. SA § IX(87).

### iii.    Requests for Exclusion and Objections

Settlement Class members will have up to 30 days before the Final Approval Hearing to object to or to submit a request to opt-out of the Settlement. *Id.* §§ II(38)-(39). Similar to the timing of the Claims process, the timing with regard to objections and requests for exclusion is structured to give Settlement Class members sufficient time to access and review the Settlement documents—including Plaintiffs' Application for Attorneys' Fees, Costs, and Service Awards, which will be filed 45 days before the original date set for the Final Approval Hearing. *Id*. § X(97).

### d.    Fees, Costs, and Service Awards

The Settlement Agreement calls for reasonable Service Awards to Plaintiffs of up to $2,000.00 each. *Id.* § XI(99). The Service Awards are meant to compensate Plaintiffs for their efforts on behalf of the Settlement Class, including maintaining contact with Class Counsel, assisting in the investigation of the Action, remaining available for consultation throughout the

mediation, and answering Class Counsel's many questions. Joint Decl. ¶ 15.

After agreeing to the terms of the Settlement on behalf of the Settlement Class, Class Counsel negotiated their fees and costs separate from the Settlement Class Member Benefits, in an amount not to exceed 33.33% of the Settlement Fund. SA § XI(100); Joint Decl. ¶ 16.

Plaintiffs will file their Motion for Final Approval of the Settlement, inclusive of the Application for Attorneys' Fees, Costs, and Service Awards, and prior to Settlement Class members' deadline to opt-out of or object to the Settlement Agreement. SA § X(97).

## IV.    LEGAL AUTHORITY

"Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Macedonia Church v. Lancaster Hotel, LP*, No. 05-0153 TLM, 2011 WL 2360138, at *9 (D. Conn. June 9, 2011). "Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Group S.p.A. Sec. Litig.* (*In re Luxottica Group Litig.*), 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. In determining whether to preliminarily approve a class action settlement, courts must first determine that the settlement class, as defined by the parties, is certifiable under the standards of Federal Rule of Civil Procedure 23(a) and (b). "Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir.2006) (concluding in part that "the

District Court conducted a Rule 23(a) and (b) analysis that was properly independent of its Rule 23(e) fairness review"); *see also Johnson v. Kendall*, No. 3:21-CV-1214 (CSH), 2023 WL 6227678, at *2 (D. Conn. Sept. 26, 2023); *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 174 (S.D.N.Y. May 29, 2014).

Then, as part of Rule 23(e)'s "fairness, reasonableness, and adequacy" inquiry, courts must determine whether the terms of a proposed settlement warrant preliminary approval. *Lassen v. Hoyt Livery, Inc.*, No. 13-CV-1529 (VAB), 2017 WL 11682923, at *4 (D. Conn. June 5, 2017) ("Before approving a class action settlement, 'the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion.'" (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)). Courts in this Circuit find preliminary approval is warranted where it is the result of "serious, informed, non-collusive ('arm's length') negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies . . . and where the settlement appears to fall within the range of possible approval." *Id.*; *Cohen*, 262 F.R.D. at 157; *In re Nasdaq Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. Oct. 16, 1997); *Bourlas v. Davis Law Assocs.,* 237 F.R.D. 345, 354 (E.D.N.Y. Aug. 30, 2006); *see also* Manual for Complex Litigation, § 30.41.

In granting preliminary approval, courts direct notice to be provided to settlement class members, who are given the opportunity to exclude themselves from or object to the settlement. *Lassen*, 2017 WL 11682923, at *4; *In re Nasdaq Antitrust Litig.,* 176 F.R.D. at 102. At the final approval hearing, settlement class members may be heard by the court prior to its determination of whether to grant final approval of the settlement and dismiss the case. *Id.*

Because cases like the one at issue here, if handled on an individual basis, would heavily tax the system and cause large and unwarranted expenditures of both public and private resources,

the proposed Settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner. As set forth below, the Settlement here warrants Preliminary Approval so that Settlement Class members will be notified of the Settlement and provided an opportunity to voice exclusion or objection.

## V.    LEGAL DISCUSSION

### a.    The Settlement Class Should be Preliminarily Approved.

Courts within this Circuit follow the *Manual for Complex Litigation (Fourth)* guidelines and advise that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies [Rule 23] criteria[.]" § 21.632; *see, e.g.*, *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 105, n.30 (D. Conn. 2010).

Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class.

Moreover, along with the requirements of 23(a), under Rule 23(b)(2), the Court must find that PHL's alleged conduct at issue is generally applicable to the class such that injunctive relief is appropriate respecting the class as a whole. Further, under 23(b)(3), the Court must find that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  And, in the context of a settlement, courts need not assess manageability. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

"In deciding certification, 'courts must take a liberal rather than restrictive approach in

determining whether the plaintiff satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class.'" *Cohen*, 262 F.R.D. at 158 (quoting *Steinberg v. Nationwide Mut. Ins. Co.,* 224 F.R.D. 67, 72 (E.D.N.Y. Sept. 4, 2004)); *see also Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir.1997) ("Rule 23 is given a liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in deciding whether to grant certification.); *Johnson*, 2023 WL 6227678, at *2.

Class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a *national* basis—including the record-breaking settlement in *In re Equifax,, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019); *see also, e.g., In re Target*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This Action should similarly be certified.

### i.      The Settlement Class is sufficiently numerous.

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1); *Johnson*, 2023 WL 6227678, at *4. While there is no numerical requirement for satisfying the numerosity requirement, forty class members generally satisfies the numerosity requirement. *Alcantara v. CNA Mgmt., Inc.*, 264 F.R.D. 61, 64 (S.D.N.Y. Dec. 8, 2009); *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 370 (S.D.N.Y. Jan. 29, 2007); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995). Here, the Parties have identified approximately 285,000 individuals whose data was potentially impacted by the Data Incident. Joint Decl. ¶ 12. The large Settlement Class renders joinder impracticable. As such, the numerosity requirement is easily satisfied.

### ii.      Questions of law and fact are common to the Settlement Class.

Commonality requires Plaintiffs to demonstrate "questions of law or fact common to the

class." Fed. R. Civ. P. 23(a)(2); *Johnson*, 2023 WL 6227678, at *4. The threshold for meeting this prong is not high—commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation and capable of generating common answers even where the individuals are not identically situated. *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. at 175 (citing *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011)). A plaintiff may meet the commonality requirement where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system." *Marisol A.*, 126 F.3d at 377. "Even a single common legal or factual question will suffice." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162 (S.D.N.Y. Mar. 19, 2014) (quoting *Freeland v. AT & T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. Aug. 17, 2006)).

Here, commonality is met because Plaintiffs can demonstrate numerous common issues exist. For example, whether PHL failed to adequately safeguard the Personal Information of Plaintiffs and other Settlement Class members is a question common across the entire Settlement Class. PHL's data security safeguards were common across the Settlement Class, and those applied to the data of one Settlement Class member did not differ from those safeguards applied to another.

Other specific common issues include, but are not limited to:

- Whether PHL unlawfully lost or disclosed Plaintiffs' and Settlement Class members' Personal Information;

- Whether PHL failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of information compromised in the Data Incident;

- Whether PHL's data security systems, prior to and during the Data Incident, complied

13

with applicable data security laws and regulations; and

-    Whether PHL's conduct rose to the level of negligence.

These common questions, and others alleged by Plaintiffs in their Consolidated Complaint, are central to the causes of action brought here, will generate common answers, and can be addressed on a class-wide basis. Thus, Plaintiffs have met the commonality requirement of Rule 23.

### iii.    Plaintiffs' claims and defenses are typical of the Settlement Class.

Typicality under Rule 23(a)(3) is satisfied where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Securities Litig.,* 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation omitted); *Johnson*, 2023 WL 6227678, at *5; *see also Bolanos v. Norwegian Cruise Lines Ltd.,* 212 F.R.D. 144, 155 (S.D.N.Y. Nov. 26, 2002). The crux of the typicality requirement is to ensure that "maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A.,* 126 F.3d at 376.

Here, Plaintiffs and Settlement Class members' claims all stem from the same event—the Data Incident—and the cybersecurity protocols that PHL had (or did not have) in place to protect Plaintiffs' and Settlement Class members' data. Thus, Plaintiffs' claims are typical of the Settlement Class members' claims, and the typicality requirement is satisfied.

### iv.    Plaintiffs and Class Counsel will provide fair and adequate representation for the Settlement Class.

Plaintiffs must be able to provide fair and adequate representation for the class. To satisfy the adequacy of representation requirement, plaintiffs must establish that: (1) there is no conflict of interest between the class representatives and other members of the class; and (2) the plaintiffs' counsel is qualified, experienced, and generally able to conduct the litigation. *Bolanos*, 212 F.R.D.

14

at 156 (quoting *Marisol A.,* 126 F.3d at 378); *see also Amchem Prods., Inc.,* 521 U.S. at 624; *Johnson*, 2023 WL 6227678, at *6.

Here, Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the same Data Incident. Plaintiffs and Settlement Class members' data was all allegedly compromised by PHL in the same manner. Under the terms of the Agreement, Plaintiffs and Settlement Class members will all be eligible for reimbursement for costs and time expended in managing the personal impact that the Data Incident may have had on them. Moreover, each of their data will be more surely safeguarded in the future by the increased security protections PHL has agreed to put into place.

Further, Class Counsel have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Settlement Class. *See* Joint Decl. ¶¶ 3-6, Exs. 1-3. Moreover, they have put their collective experience to use in negotiating an early-stage settlement that guarantees immediate relief to Settlement Class members. Thus, the requirements of Rule 23(a) are satisfied.

> ### v.    The requirements of Rule 23(b)(2) are met.

Rule 23(b)(2) allows for class certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 564 U.S. at 360–61 at 360 (internal citation omitted). Here, Plaintiffs ask the Court to approve the security measures implemented by PHL. SA § III(67)-(70). Such security measures represent singular injunctive

relief that will benefit all Settlement Class members. *See Hyland v. Navient Corp.*, 48 F.4th 110 (2d Cir. 2022) (affirming settlement class certification under Rule 23(b)(2) where all class members would benefit from the defendant's agreed to business-practice enhancements). Accordingly, Rule 23(b)(2) is satisfied.

> ### vi. *Because common issues predominate over individualized ones, class treatment is superior.*

To show that common issues predominate, Plaintiffs must demonstrate that common questions of law or fact relating to the Settlement Class predominate over any individualized issues. *Bolanos*, 212 F.R.D. at 157. This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.,* 521 U.S. at 623. The predominance requirement is met when the defendant's wrongful acts involve common practices, or when the defendant has a common defense. *Fox v. Cheminova,* 213 F.R.D. 113, 130 (E.D.N.Y. Feb. 28, 2003) (citing *In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145, 166-167 (2d Cir. 1987)). Commonality is regularly met in cases where the focus is on the conduct of a defendant rather than that of individual plaintiff, making it particularly susceptible to common, generalized proof. *Cohen,* 262 F.R.D. at 159.

In this case, the key predominating questions are whether PHL had a duty to exercise reasonable care in safeguarding, securing, and protecting the Personal Information of Plaintiffs and the Settlement Class, and whether PHL breached that duty. The common questions that arise from PHL's conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 312-15 (N.D. Cal. Aug. 15, 2018) (predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal

information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).

Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

The resolution of tens of thousands of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating tens of thousands of individual data breach cases arising out of the *same* Data Incident.

The common questions of fact and law that arise from PHL's conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues,

and the requirements of Rule 23(b)(3) are met. Accordingly, the Settlement Class should be preliminarily certified for settlement purposes.

      **b.**      **The Settlement Terms are Fair, Adequate, and Reasonable.**

Rule 23(e)(2) permits approval of a class action settlement after the Court determines the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In evaluating a class action settlement, courts consider factors such as: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) (abrogated on other grounds).

Preliminary approval of a settlement agreement requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *See* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (*"Newberg"*) § 11.25 (4th ed. 2002). While preliminary approval is a matter of discretion for the trial court, the court must give "proper deference to the private consensual decision of the parties" in exercising its discretion. *Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1079 (2d Cir. 1995); *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-CV-1113 (VAB), 2016 WL 6542707, at *6 (D. Conn. Nov. 3, 2016); *Clark v. Ecolab Inc.,* 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation omitted). To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold

a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n,* 627 F.2d 631, 634 (2d Cir. 1980). If, after a preliminary evaluation of the proposed settlement, the court finds that it "appears to fall within the range of possible approval," the court should order that the class members receive notice of the settlement. *Newberg* § 11.25; *see also Cohen*, 262 F.R.D. at 157; *In re Nasdaq Antitrust Litig.,* 176 F.R.D. at 102; *Bourlas,* 237 F.R.D. at 354.

Fairness is determined by reviewing both the terms of the settlement agreement and the negotiating process that led to such an agreement. *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 184 (W.D.N.Y. 2005). Preliminary approval should be granted where the settlement agreement is the result of serious, informed, non-collusive ("arm's length") negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies, and where the settlement appears to fall within the range of possible approval. *See Cohen*, 262 F.R.D. at 157; *Kemp-DeLisser*, 2016 WL 6542707, at *7; *In re Nasdaq Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. Oct. 16, 1997); *Bourlas,* 237 F.R.D. 345, 354 (E.D.N.Y. Aug. 30, 2006); *see also Manual for Complex Litigation*, § 30.41.

### i.    The Settlement was the result of arm's length negotiations between the Parties.

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation omitted). Using a private mediator reinforces the non-collusive nature of a settlement. *Kemp-DeLisser*, 2016 WL 6542707, at *10; *Capsolas v. Pasta Res. Inc.,* No. 10-cv-5595, 2012 WL 1656920 at *1 (S.D.N.Y. May 9, 2012). Here, the Settlement resulted from good faith, arm's length negotiations, and with the assistance of Hon. Diane M. Welsh (Ret.) of JAMS, who has extensive experience with both class actions generally and data privacy matters in particular. Joint

Decl. ¶ 10. After fully briefing the issues, the Parties attended a full-day mediation where, with the assistance of Judge Welsh, the Parties eventually reached agreement on the material terms of the Settlement. *Id.* at ¶¶ 13-15. Following the mediation, the Parties spent weeks drafting and finalizing the agreement presently before the Court. *Id.* at ¶ 20. Accordingly, the presumption of reasonableness should apply here.

> ii.     **The Settlement provides substantial relief to the Settlement Class, particularly in light of the uncertainty of prevailing on the merits.**

The Settlement guarantees Settlement Class Members real relief for harms and assurance that they are less likely to be subject to similar breaches due to PHL's data security systems enhancements. Settlement Class Members who submit Valid Claims may choose between two Cash Payments – Cash Payment A or Cash Payment B – but subject to a potential *pro rata* increase or decrease. Cash Payment A provides for compensation for (1) documented, unreimbursed ordinary losses up to a total of $1,500.00 per person; (2) attested lost time spent of $25.00 per hour up to five hours (a total of $125.00); and (3) for documented, extraordinary losses, up to a total of $10,000.00, per Settlement Class Member. SA § V(68). Cash Payment B, on the other hand, is a flat payment in the amount of $100.00. SA § V(69). Additionally, PHL has already and will continue to implement additional security enhancement protocols to guarantee that Settlement Class Members' Personal Information will be better safeguarded in the future. SA § V(70).

The value achieved through the Settlement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of their case, they also understand that PHL will assert a number of potentially case-dispositive defenses. Proceeding with litigation would open up Plaintiffs to the risks inherent in trying to achieve and maintain class certification, and prove liability—both factors considered under the test for final approval established by *Grinnell*. 495 F.2d at 463. In fact, should litigation continue, Plaintiffs would likely

have to survive a motion to dismiss filed in order to proceed past the pleading stage and into litigation.

Moreover, due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met— and one that has been denied in other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

Plaintiffs dispute the defenses it anticipates PHL will likely assert—but it is obvious their success at trial is far from certain. Through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of receiving no relief.

### iii.    *Continued litigation is likely to be complex, lengthy, and expensive.*

The costs, risks, and delay of continued litigation weigh in favor of settlement approval. Although Plaintiffs are confident in the merits of their claims, the risks discussed above cannot be disregarded. Aside from the potential that either side will lose at trial, Plaintiffs anticipate incurring substantial additional costs in pursuing this Action further. Should litigation continue, Plaintiffs would likely need to defeat PHL's motion to dismiss, counter a later motion for summary judgment, and both gain and maintain certification of the class. The level of additional costs would significantly increase as Plaintiffs begin their preparations for the certification argument and if successful, a near inevitable interlocutory appeal attempt.

### iv.    *The Settlement was reached after significant investigation and exchange of information.*

When warranted, courts encourage early settlement of class actions because early

settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See In re Interpublic Sec. Litig.*, No. 02-cv-6527, 2004 WL 2397190 at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances); *Castagna v. Madison Square Garden, L.P.*, No. 09-cv-10211, 2011 WL 2208614 at *10 (S.D.N.Y. June 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement). Here the Parties acted responsibly in reaching an early settlement. Despite the early stage of litigation, Plaintiffs here were able to complete an independent investigation of the facts to reach a full understanding of the value of the Action, as well as the attendant risks of continued litigation. Joint Decl. ¶¶ 7, 9. It is the strong opinion of proposed Class Counsel that the Settlement presents a favorable result for the Settlement Class. *Id.* ¶¶ 12-13, 17-21.

> **v.      The reaction of the Settlement Class has been positive.**

Notice has not yet issued to the Settlement Class. As such, the Court will have a better opportunity to fully analyze this factor after Notice issues and Settlement Class members are given an opportunity to make claims, opt-out, or object. At this early stage, given that all Plaintiffs have signed the Agreement, this factor weighs in favor of Preliminary Approval.

**c.      The Settlement Should be Approved Under Rule 23(e)(2).**

Rule 23(e) requires courts to ensure that a class settlement is "fair, reasonable, and adequate" in light of the following factors:

(A)      the class representatives and plaintiffs' counsel have adequately represented the class;

(B)      the proposal was negotiated at arm's length;

(C)      the relief provided for the class is adequate, taking into account:

(i)      the costs, risks, and delay of trial and appeal;

(ii)      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)      the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)      any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

These factors largely overlap with the *Grinnell* factors, and thus, also support Preliminary Approval. *See* Section (V)(a),(b), *supra*; *see, e.g.*, *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023). Plaintiffs also state that there is no additional agreement between the Parties that would affect any term of the Agreement. Joint Decl. ¶ 19.

### d.    The Settlement Administrator Will Provide Adequate Notice.

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

The Notice provided by the Agreement is designed to meet all the criteria set forth by the Manual for Complex Litigation. *See* SA Exs. 1-3. Here, PHL has agreed to have the Settlement Administrator disseminate direct and individual Notice, first via Email Notice to those individuals who provided record of the e-mail addresses, and then, where PHL cannot provide the Settlement Administrator with a valid e-mail address, via Postcard Notice. SA §§ VIII(77),(83).

Not only has PHL agreed to have the Settlement Administrator provide Settlement Class members with individualized Notice via Email Notice or Postcard Notice, but a Long Form Notice will also be available to Settlement Class members on the Settlement Website, along with all relevant filings. SA § II(35). The Settlement Administrator will also make a toll-free telephone

line available by which Settlement Class members can seek answers to questions or request a Notice or Claim Form be mailed to them at their address. SA § VII(75)(f).

The Notices are clear and straightforward. They define the Settlement Class; clearly describe the options available to Settlement Class members and the deadlines for taking action; describe the essential terms of the Settlement; disclose the requested Service Awards for the Class Representatives, as well as the amount that proposed Class Counsel intends to seek in attorneys' fees and costs; explain procedures for making Claims, objections, or requesting exclusion; provide information that will enable Settlement Class members to calculate their individual recovery; describe the date, time, and place of the Final Approval Hearing; and prominently display the address and phone number of Class Counsel. *See* SA., Exs. 1-3.

The Notice is designed to be the best practicable under the circumstances, apprises Settlement Class members of the pendency of the Action, and gives them an opportunity to object or exclude themselves from the settlement. Accordingly, the Notice process should be approved by this Court. Joint Decl. ¶ 20.

## VI.    CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that guarantees Settlement Class Members significant relief in the form of cost and time reimbursement and equitable relief consisting of increased data security safeguards. The Settlement is well within the range of reasonable results, and an initial assessment of the *Grinell* and Rule 23(e)(2) factors favors approval. For these and the above reasons, Plaintiffs respectfully request this Court certify the Settlement Class for settlement purposes and grant Preliminary Approval of the Settlement. A proposed Preliminary Approval Order, which includes the below schedule, is attached hereto as ***Exhibit C***, and Plaintiffs request the Final Approval Hearing be set <u>180 days</u> after entry of the

Preliminary Approval Order:

| Event | Date |
|---|---|
| **Notice Program Begins** | 45 days after Preliminary Approval |
| **Notice Program Complete** | 60 days before original Final Approval Hearing  date |
| **Deadline to File Motion for Final Approval, and Application for Attorneys' Fees , Costs, and Service Award** | 45 days before original Final Approval Hearing date |
| **Opt-Out Deadline** | 30 days before original Final Approval Hearing date |
| **Objection Deadline** | 30 days before original Final Approval Hearing date |
| **Deadline to Respond to Objections** | 15 days before original Final Approval Hearing date |
| **Deadline to Submit Claim Forms** | 90 days from date Notice Program begins |
| **Final Approval Hearing** | **_____, 2024 at _____ am/pm** |

Dated: May 6, 2024.                                    Respectfully submitted,

*/s/ Jeff Ostrow*
Jeff Ostrow*                                          Raina Borrelli*
**KOPELOWITZ OSTROW P.A.**                            **TURKE & STRAUSS LLP**
One West Las Olas Blvd., Suite 500                    613 Williamson St., Suite 201
Fort Lauderdale, Florida 33301                        Madison, Wisconsin 53703
Telephone: (954) 332-4200                             Telephone: (608) 237-1775
ostrow@kolawyers.com                                  raina@turkestrauss.com

Oren Faircloth, CT Bar #438105                        Mariya Weekes*
Mason A. Barney*                                      **MILBERG COLEMAN BRYSON**
Tyler J. Bean*                                        **PHILLIPS GROSSMAN, PLLC**
**SIRI & GLIMSTAD LLP**                               201 Sevilla Avenue, 2nd Floor
745 Fifth Avenue, Suite 500                           Coral Gables, Florida 33134
New York, New York 10151                              Telephone: (786) 879-8200
Telephone: (212) 532-1091                             mweekes@milberg.com
ofaircloth@sirillp.com
mbarney@sirillp.com                                   Daniel Srourian*
tbean@sirillp.com                                     **SROURIAN LAW FIRM, P.C.**
                                                      3435 Wilshire Blvd., Suite 1710
Gary E. Mason*                                        Los Angeles, California 90010
Danielle L. Perry*                                    Telephone: (213) 474-3800
Lisa A. White*                                        Email: daniel@slfla.com
**MASON LLP**
5335 Wisconsin Avenue, NW, Suite 640                  *Pro hac vice*
Washington, DC 20015
Telephone: (202) 429-2290
gmason@masonllp.com
dperry@masonllp.com
lwhite@masonllp.com

*Counsel for Plaintiffs and the Settlement Class*