# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| Mathis v. Planet Home Lending, LLC<br><br>(In re: Planet Home Lending, LLC Data Breach) | Case No. 3:24-cv-127 (KAD) |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

Plaintiffs, Brandon Mathis, Nashira Williams, Jamie Lee Mazzo, Jeffrey Benson, Frank Canepa, William Ekola, Joe Ward, Antonio Cole, and Ramsey Coulter, on behalf of the Settlement Class,[1] with the consent of Defendant, Planet Home Lending, LLC, hereby move this Court for Final Approval of the class action Settlement preliminarily approved by this Court on May 13, 2024. Plaintiffs respectfully request this Court enter a Final Approval Order and thereafter a Final Judgment as follows: (a) granting certification of the Settlement Class for settlement purposes; (b) appointing Plaintiffs as Class Representatives and reaffirming as Class Counsel the attorneys appointed in the Preliminary Approval Order; (c) finding the Notice Program satisfied due process requirements and Federal Rule of Civil Procedure 23; (d) finding the terms of the Settlement fair, reasonable, and adequate; (e) directing the Parties, their attorneys, and the Settlement Administrator to consummate the Settlement in accordance with the Final Approval Order and the terms of the Agreement; (f) resolving all claims, including the Released Claims, against the Released Parties and ruling the Settlement is binding on all Settlement Class Members, including the Releases contained in the Agreement; (g) overruling objections, if any; (h) granting Class

---

[1] The capitalized terms herein shall have the same meaning as those defined in Section II of the Settlement Agreement and Releases, which is attached hereto as ***Exhibit A***.

Counsel's Application for Attorneys' Fees, Costs, and Service Awards; and (i) dismissing the Action and entering a Final Judgment.

In support of this Motion for Final Approval, Plaintiffs submit the Agreement, a Joint Declaration of Class Counsel, a Declaration of the Settlement Administrator, all other pleadings and papers on file in this Action, and any oral argument that may be heard by this Court during the Final Approval Hearing currently scheduled for November 14, 2024.

## I.    INTRODUCTION

On May 13, 2024, this Court preliminarily approved the Settlement, which provides for substantial Settlement Class Benefits, including a non-reversionary all cash $2,425,000.00 Settlement Fund from which Settlement Class Members with Valid Claims may select one of the following cash compensation options: (a) Cash Payment A - documented ordinary out-of-pocket losses up to $1,500.00, documented extraordinary losses up to $10,000.00, and lost time up to $125.00; or (b) Cash Payment B - a flat cash payment of $100.00. DE# 44. The Settlement Fund will also be used to pay all Settlement Administration Costs, any Court-awarded attorneys' fees and costs to Class Counsel and other Plaintiffs' counsel, and any Court-awarded Service Awards to the Class Representatives.

Plaintiffs and Class Counsel now move the Court for Final Approval and to grant Class Counsel's Application for Attorney's fees, Costs, and Service Awards. The Settlement meets all the criteria for Final Approval. The overwhelmingly positive response from the Settlement Class, including an extraordinary claims rate and the fact that to date not a single Settlement Class Member has objected to any part of the Settlement, affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate. For all the reasons set forth herein, the Court should grant Final Approval of the Settlement and award attorneys' fees and costs and Service Awards.

## II.    PROCEDURAL HISTORY

This Action arises out of a November 15, 2023, Data Incident wherein the Personal Information, including Social Security numbers, of approximately 285,000 individuals was stolen by cybercriminals. *See* Joint Declaration of Class Counsel, attached hereto as ***Exhibit B*** ("Joint Decl.") ¶ 2. In response to the Data Incident, on January 31, 2024, Plaintiff Mathis filed a Class Action Complaint, *Mathis v. Planet Home Lending, LLC*, Case No. 3:24-cv-127 (D. Conn.), against PHL seeking to represent a nationwide class of aggrieved individuals and asserting causes of action for: (1) negligence; (2) negligence per se; (3) breach of implied contract; (4) unjust enrichment; and (5) declaratory judgment. DE# 1; Joint Decl. ¶ 3. Following the filing of *Mathis*, PHL was named a defendant in five other putative class actions filed in the District of Connecticut[2] and two others filed in state and federal court in Florida[3] that are materially and substantively identical, as they have overlapping claims, seek to represent the same putative Settlement Class members, and arise out of the same Data Incident. Joint Decl. ¶ 4.

On February 8, 2024, Plaintiffs in the Related Actions filed an Unopposed Motion and Incorporated Memorandum of Law in Support of their Motion for Consolidation of the Mathis and the Related Actions and for Appointment of Co-Interim Lead Counsel. DE# 11; Joint Decl. ¶ 5. On March 1, 2024, the Court granted that motion. DE# 26; Joint Decl. ¶ 6.  Thereafter, Plaintiffs

---

[2] *Mathis v. Planet Home Lending, LLC*, Case No. 3:24-cv-127 (filed on January 31, 2024); *Mazzo v. Planet Home Lending, LLC*, Case No. 3:24-cv-130 (filed on February 1, 2024); *Benson v. Planet Home Lending, LLC*, Case No. 3:24-cv-131 (February 1, 2024); *Canepa v. Planet Home Lending, LLC*, Case No. 3:24-cv-145 (filed on February 2, 2024); *Ekola v. Planet Home Lending, LLC*, Case No. 3:24-cv-145 (filed on February 5, 2024); and *Ward v. Planet Home Lending, LLC*, Case No. 3:24cv-00158 (filed on February 6, 2024).

[3] *Cole v. Planet Home Lending, LLC*, Case No. 24-cv-60269 (S.D. Fla.; filed on Feb. 6, 2024); and *Coulter v. Planet Home Lending, LLC*, Case No. 2024000019 (Madison Cty.; filed on Feb. 17, 2024).  *Coulter* was subsequently removed to federal court on March 18, 2024.  *Coulter v. Planet Home Lending, LLC*, Case No. 24-cv-130 (N.D. Fla). *Cole* was voluntarily dismissed on April 5, 2024, and *Coulter* was voluntarily dismissed on April 9, 2024.

prepared written discovery, including interrogatories and document requests, and a Fed. R. Civ. P. 30(b)6 notice. Joint Decl. ¶ 7. Additionally, Plaintiffs prepared a proposed protective order governing confidential information and a proposed protocol governing electronically stored information. *Id.* ¶ 8.

Shortly thereafter, to conserve resources and avoid protracted and costly litigation, the Parties began discussing early resolution. *Id.* ¶ 9. The Parties then scheduled mediation for March 29, 2024, with the Honorable Diane Welsh (Ret.) from JAMS, a highly respected class action mediator with significant data breach experience. *Id.* In advance of mediation, the Parties engaged in informal discovery to assist in evaluating liability and damages. *Id.* ¶. The Parties also exchanged mediation statements outlining their positions with respect to settlement. *Id.*

On March 29, 2024, after a full day of mediation, the Parties reached agreement on the material terms of a settlement. *Id.* ¶ 10. Class Counsel were able to utilize their collective and significant experience in class action litigation, including having negotiated dozens of complex data breach settlements. *Id.* ¶ 11.

On April 1, 2024, Plaintiffs filed a Consolidated Class Action Complaint, asserting causes of action for: (1) negligence; (2) negligence per se; (3) breach of implied contract; (4) unjust enrichment; and (5) declaratory judgment, seeking to represent a nationwide class of aggrieved individuals. DE# 33; Joint Decl. ¶ 12. Shortly thereafter, the Parties filed a Notice of Classwide Settlement advising the Court the Parties resolved the class claims on April 29, 2024. DE# 39; Joint Decl. ¶ 13. After a month of negotiations over the terms of the Settlement following the March 29, 2024 mediation, on May 2, 2024, the Parties signed the Agreement. Joint Decl. ¶ 14. Thereafter, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Settlement on May 6, 2024, which the Court granted on May 13, 2024. DE# 43-44; Joint Decl. ¶¶ 15-16.

After this Court granted Preliminary Approval, the Settlement Administrator successfully disseminated Notice to the Settlement Class. *See* Joint Declaration of Settlement Administrator Cameron R. Azari, attached hereto as ***Exhibit C*** ("Admin. Decl.") ¶¶ 18-28. Individual Postcard Notice was provided directly to Settlement Class members via first class mail. Notice reached 99% of the Settlement Class, easily meeting the due process standard. *Id.* ¶ 19. The Notice provided each Settlement Class member with all the necessary information to understand the terms of the Settlement, how to make a Claim, and how to opt-out of or object to the Settlement. *Id*. ¶¶ 36-39. Out of 281,590 Settlement Class members, none has to date objected to any part of the Settlement, and only 18 validly requested to opt-out. *Id.* ¶ 32-33. Notably, a total of 29,433 claims were filed, *id.* ¶ 35, representing a claims rate of over 10%, which compares very favorably to similar data privacy class action settlements in which claims rates typically range between 1% and 3%. The Settlement Class' overwhelmingly positive response affirms that the Court's initial conclusion that the Settlement is fair, reasonable, and adequate was fully justified.

**SUMMARY OF THE SETTLEMENT**

Below is a summary of the Agreement's material terms and the Settlement Class Benefits.

**<u>Settlement Class</u>**

The Settlement Class consists of:

All living individuals residing in the United States who were sent a notice by PHL that their Personal Information may have been impacted in the Data Incident.

Agreement ¶ 56.

Excluded from the Settlement Class are (a) all persons who are employees, directors, officers, and agents of PHL; (b) governmental entities; and (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff. *Id.*

**Settlement Consideration**

If approved, the Settlement requires PHL to create a non-reversionary all cash $2,425,000.00 Settlement Fund for payment of Settlement Class Member Cash Payments, Settlement Administration Costs, and any Court-awarded attorneys' fees, costs, and Service Awards. PHL has also agreed to valuable injunctive relief.

As for the Cash Payment, Settlement Class Members have may elect two options.

*Cash Payment A*

Settlement Class Members may submit a Claim for one or more of the following:

- Compensation for ordinary out-of-pocket losses of up to $1,500.00 per person, consisting of ordinary out-of-pocket expenses related to the Data Incident (including fees for credit reports, bank fees, phone charges, data charges, postage, gasoline, credit monitoring, identity theft insurance, and any other documented loss fairly traceable to the Data Incident);

- Compensation for lost time spent responding to the Data Incident of up to five hours of time spent at a rate of twenty-five dollars ($25.00) per hour (or $125.00 in total); and

- Compensation for extraordinary losses, may be up to a total of $10,000.00, per Settlement Class Member, if the extraordinary loss is: (i) an actual, documented and unreimbursed monetary loss due to fraud or identity theft; (ii) fairly traceable to the Data Incident; (iii) occurred after the Data Incident and before the Claim Form Deadline; (iv) not already covered by one or more of the ordinary loss categories, and (v) the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

*Cash Payment B*

- As an alternative to Cash Payment A, Settlement Class Members may elect to receive Cash Payment B, which is a flat cash payment in the amount of $100.00.

Agreement, ¶¶ 68-69.

All Cash Payments will be subject to a *pro rata* increase from the Net Settlement Fund if the amount of Valid Claims are insufficient to exhaust the entire Net Settlement Fund. Similarly, if the amount of Valid Claims exhausts the amount of the Net Settlement Fund, the amount of the

Cash Payments may be reduced *pro rata*. Agreement, ¶ 67.

If, consistent with the plan of distribution, there are funds remaining in the Settlement Fund 20 days following the 180-day period for Settlement Class Members to select the form of electronic payment, following payment of Settlement Class Member Payments, any remaining funds are to be distributed to a Court-approved *cy pres* recipient. *Id.* ¶ 102. The Parties propose the Consumer Federation of America as the *cy pres* recipient. *Id.*

Additionally, PHL has also agreed to implement or continue certain reasonable steps to adequately secure its systems and environments. All costs associated with these security-related measures have been and will continue to be paid separate and apart from the Settlement Fund to help better protect the Personal Information that continues to be stored within PHL's computer systems. Agreement, ¶ 70.

### Releases

The Releases are tailored to the claims "relating to the Data Incident," i.e., that have been pled or could have been pled in this Action. Settlement Class Members who do not opt-out of Settlement will release all claims, whether known or unknown, against PHL and its affiliates, that relate to the Data Incident. *Id.* § 103.

### Attorneys' Fees, Costs, and Service Awards

Plaintiffs request the Court award an attorneys' fee award of 33.33% of the Settlement Fund ($808,333.33), along with reimbursement of $9,907.89 for reasonable litigation costs. Plaintiffs also request $2,000.00 Service Awards for each Class Representative ($18,000.00 total). *Id.* ¶ 99-100. The attorneys' fees, costs, and Service Awards will be paid from the Settlement Fund. *Id.* The Notices sent to Settlement Class members listed the attorneys' fees and not a single Settlement Class member has objected to the amounts sought. Admin. Decl., Attachment 4.

## IV.    NOTICE PROGRAM, CLAIMS PROCESS, OPT-OUTS AND OBJECTIONS

### A.    Notice Program

The Notice Program was completed pursuant to the Agreement's terms and the Preliminary Approval Order. Admin. Decl. ¶ 22. In May, 2024, the Settlement Administrator received the Class List from Defendant, consisting of Settlement Class member records. *Id.* ¶ 23. The data file contained names and mailing addresses. *Id*. The Settlement Administrator reviewed the data file and removed duplicative records, resulting in 281,590 unique records. *Id*.

On June 27, 2024, Postcard Notice was sent by U.S. Mail to 281,590 Settlement Class members. *Id*. ¶ 24. Notices returned as undeliverable with a forwarding address were re-mailed to the forwarding address. *Id*. ¶ 26. Notices returned without a forwarding address were subjected to an address verification search to locate an updated address. *Id*. As a result of the above-described efforts, 3,365 were re-mailed to updated addresses and only 2,637 were undeliverable. *Id*. ¶ 28. The Notice mailing was completed on or before September 15, 2024, in accordance with the Preliminary Approval Order and 99% of the Settlement Class received notice. *Id*.

Pursuant to the Notice Program, the Settlement Administrator also established a toll-free number on June 25, 2024, for Settlement Class member inquiries. *Id*. ¶ 30. The toll-free hotline utilizes an interactive voice response system to provide Settlement Class members with responses to frequently asked questions and provide essential information regarding the Settlement. *Id.* Following Preliminary Approval, the telephone line has been accessible 24 hours a day, 7 days a week. *Id*. As of September 16, 2024, there have been 2,586 calls totaling 6,632 minutes. *Id*.

### B.    Claims Process

The Claims Process has also been successful in terms of Claims made. The Claims deadline was September 25, 2024. As of September 16, 2024, the Settlement Administrator received 29,433

Claim Forms. Admin. Decl. ¶ 35 The Claim Forms are still subject to final audits, including the full assessment of each Claim's validity and a review for duplicate submissions. *Id*. Class Counsel will update the Court at the Final Approval Hearing as to the number of Valid Claims.

### C.    Opt-Outs and Objections

The Objection and Opt-Out Periods will end on October 15, 2024. As of September 16, 2024, there have been only 18 Opt-Outs (representing .006% of the Settlement Class) and no objections received. *Id*. ¶¶ 32-33.

## V.    THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT

"Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Macedonia Church v. Lancaster Hotel, LP*, No. 05-0153 TLM, 2011 WL 2360138, at *9 (D. Conn. June 9, 2011). "Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Group S.p.A. Sec. Litig.* (*In re Luxottica Group Litig.*), 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

### A.    The Settlement is Fair, Reasonable, and Adequate

This Court's Preliminary Approval Order determined the Settlement terms were likely to be approved as fair, reasonable, and adequate under Fed. R. Civ. P. 23(e), the Settlement is within the range of possible approval, and the Settlement was entered into after extensive, arm's-length negotiations. DE# 44. The Court should now finally determine the Settlement is fair, reasonable, and adequate and approve it.

The Second Circuit has identified nine factors that courts should consider in deciding

whether to approve a proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted).  A court performing this analysis should examine the totality of these factors in light of the specific circumstances involved.  *In re Synchrony Fin. Sec. Litig.*, No. 3:18-CV-1818-VAB, 2023 WL 4992933, at *18 (D. Conn. Aug. 4, 2023).

Rule 23(e)(2) requires courts to ensure a class settlement is "fair, reasonable, and adequate" in light of the following factors:

(A)   the class representatives and plaintiffs' counsel have adequately represented the class;
(B)   the proposal was negotiated at arm's length;
(C)   the relief provided for the class is adequate, taking into account:
  (i)   the costs, risks, and delay of trial and appeal;
  (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
  (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
  (iv)   any agreement required to be identified under Rule 23(e)(3); and
(D)   the proposal treats class members equitably relative to each other.

These factors largely overlap with and do not displace the *Grinnell* factors, and thus, also support Final Approval. *See, e.g.*, *Glover et al. v. Conn. Gen. Life Ins. Co., et al.*, No. 3:16-cv-00827 (MPS), 2024 WL 4036721, at *9 n.2 (D. Conn. Sept. 4, 2024) (citing *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023)). There is no additional agreement between the Parties that would affect any term of the Agreement. Joint Decl. ¶ 14.

As demonstrated below, the Parties' proposed Settlement satisfies each of the relevant

criteria set forth above. As such, the Settlement warrants this Court's Final Approval.

### 1. <u>The Complexity, Expense, and Duration Supports Final Approval</u>

"The first *Grinnell* factor requires the Court to consider the complexity, expense, and likely duration of the litigation." *In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at *19. "'Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them' and courts therefore favor class action settlements." *Id.* (quoting *In re Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). "Absent a settlement, [litigation] costs will only escalate as a result of discovery proceedings, motion practice, trials, and likely appeals." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), aff'd 117 F.3d 721 (2d Cir. 1997). This Grinnell factor overlaps with Rule 23(e)(2)(C)(i).

While Plaintiffs are confident in their claims, there was a risk a class would not be certified. Due at least in part to the cutting-edge, innovative nature of data breach litigation and the rapidly evolving law within the space, data incidents like this one generally face substantial hurdles when it comes to class certification. *See, e.g., Marriott Int'l v. Accenture LLP*, 78 F.4th 677, 685 (4th Cir. Aug. 18, 2023) (decertifying classes).

Second, there was a risk Plaintiffs' claims would not have survived, or survived in full, a motion to dismiss, motion for class certification, motion for summary judgment, and *Daubert* motions on damages methodologies. To the extent the law has gradually accepted this relatively new type of litigation, the path to a classwide monetary judgment remains unpaved, particularly in the area of damages. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury.

Third, if the Plaintiffs won a motion for class certification, successfully defeated all of Defendants' other objections and motions, and proceeded to trial, Plaintiffs still would have faced

significant risk, cost, and delay including likely interlocutory and post-judgment appeals.

In contrast to the risk, cost, and delay posed by proceeding to trial, the proposed Settlement provides certain, substantial, and immediate Settlement Class relief, ensuring Settlement Class Members receive guaranteed compensation now and providing benefits that may not be available at trial. The substantial costs, risk, and delay of a trial and appeal support adequacy.

### 2.  The Reaction of the Class to the Settlement was Favorable

The Settlement Class' positive reaction is a significant factor weighing in favor of its fairness and adequacy.  Indeed, "'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'"  *In re PaineWebber*, 171 F.R.D. at 126 (citation omitted); *see also In re Luxottica Grp. S.p.A. Secs. Litig.*, 233 F.R.D. 306, 311-12 (E.D.N.Y. 2006). As one court has noted, the reaction of the class to a settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'" *In re Veeco Instruments Inc. Sec. Litig.*, No. 05MDL-1695, 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007).

Here, the reaction to the Settlement has been extremely favorable. To date, not a single Settlement Class Member objects, and only 18 have opted-out. Additionally, over 10% of the Settlement Class returned timely Claim Forms—a rate at the high end of the range that is typical in consumer settlements, and certainly those involving data breaches.[4] Thus, the very positive reaction underscores the Settlement's value and provides strong support for Final Approval.

### 3.  The Stage of the Proceedings and Discovery Completed

Courts look to the extent of discovery conducted for two reasons: (1) after extensive

---

[4] *See, e.g., Acevedo v. Workfit Med. LLC*, 187 F. Supp. 3d 370 (W.D.N.Y. 2016) ("claims made settlement[s] . . . regularly yield response rates of 10 percent or less"); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (*en banc*) (class settlement claims rates "rarely" exceed 7%, "even with the most extensive notice campaigns"); *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005) ("claims made settlements regularly yield response rates of 10 percent or less").

discovery, the court may assume the parties have complete information about the strengths and weaknesses of their respective cases, and (2) "full discovery demonstrates that the parties have litigated the case in an adversarial manner and is, therefore, an indirect indicator that a settlement is not collusive but arms-length." 5 *Newberg on Class Actions* § 13:50 (5th ed. 2015). *See also In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at \*20-21 (citing *In re PaineWebber*, 176 F.R.D. at 126). This *Grinnell* factor overlaps with the Rule 23(e)(2)(A)-(B) factors, requiring adequate representation from the Plaintiffs and Class Counsel, and arm's-length negotiations.

Shortly after the Court granted consolidation, the Parties began discussing settlement and scheduled a mediation for March 29, 2024. Joint Decl. ¶¶ 9-10. Before mediation and to ensure Plaintiffs had sufficient information to properly evaluate liability and damages, they propounded informal discovery requests on PHL to which PHL responded by providing information and documents related to, among other things: the nature and cause of the Data Incident; the number and geographic location of victims impacted by the Data Incident; and the specific types of information breached. *Id*. ¶ 9. The Parties also exchanged mediation statements, allowing the Parties to be fully aware of the strengths and weaknesses of the case. *Id.* This was critical to the Parties' ability to negotiate and reach an agreement to settle in principle following a full day of arms' length negotiation and mediation with the Hon. Diane M. Welsh (Ret.), a respected and experienced mediator from JAMS. *Id.* Indeed, this informal discovery was therefore "sufficient to provide a clear view of the strengths and weaknesses of their cases and of the adequacy of the settlement." *In re Sturm, Ruger, & Co., Inc. Secs. Litig.*, 2012 WL 3589610, at \*16 (D. Conn. Aug. 20, 2012) (internal quotations omitted).

The Parties' efforts confirm the litigation had reached the stage where they could intelligently appraise the case and negotiate at arm's length through adequate representation.

Therefore, this factor also supports Final Approval of the Settlement.

### 4. <u>The Risk of Establishing Liability Weighs in Favor Approval</u>

This *Grinnell* factor also overlap Rule 23(e)(2)(C)(i). In assessing a settlement, the court should balance the class benefits, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463; *In re Holocaust Litig.*, 80 F. Supp. 2d at 177. Although Class Counsel are confident Plaintiffs would eventually prevail, ultimate success is far from assured. Indeed, Defendant has consistently denied committing any wrongful acts or violations of the law, or that it has any liability to the Plaintiffs or the Settlement Class.

Although Plaintiffs strongly believe Defendant's conduct was tortious, they also recognize the risk the Court or a jury might not agree. Specifically, PHL would likely argue that its practices did not violate the law; Plaintiffs have not alleged damages, and further, those damages cannot be adequately traced to PHL's conduct; and the putative class does not meet the Rule 23 certification requirements. To be sure, Plaintiffs were prepared to take on the burdens of further litigation and present substantial arguments opposing PHL's positions, but the risks they faced were significant, especially in the field of data breach litigation, which is still a novel issue to many courts across the country. The proposed Settlement avoids the Settlement Class' risk while securing tangible and useful relief that may not be obtainable after trial. The risk of no damages, or a lower, delayed, damages award at trial supports Final Approval.

### 5. <u>The Risk of Maintaining the Class Through Trial Weighs in Favor of Approval</u>

This *Grinnell* factor also overlap Rule 23(e)(2)(C)(i). The Settlement here was reached before rulings on motions to dismiss or for certification of a class. Absent settlement, there was a real risk no class would be certified or, if it was, certification might be appealed and reversed on a Rule 23(f) petition. There was no assurance class status would be reached or maintained, especially

since a court may exercise its discretion to re-evaluate the appropriateness of class certification at any time. *See e.g. In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) (denying class certification in cybersecurity incident class action litigation); *see also Marriott Int'l*, 78 F.4th at 685 (decertifying classes). The proposed Settlement allows Settlement Class Members to avoid the risk, delay and expense that would be associated with such proceedings.

6. **The Range of Reasonableness of the Settlement Fund in Light of Best Possible Recovery and the Attendant Risks of Litigation**

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). "[T]he Court is not to compare the terms of the Settlement with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion." *Veeco*, 2007 WL 4115809 at *11. Instead, the Court need only determine whether the settlement falls within a "range of reasonableness." *In re PaineWebber*, 171 F.R.D. at 130 (citation omitted); *see also Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("there is a range of reasonableness with respect to a settlement.").

In light of the disputed questions of fact and law, the Settlement's significant value and monetary recovery for the Settlement Class substantially outweighs the mere possibility of future relief. The $2,425,000 all cash non-reversionary Settlement Fund will provide substantial Settlement Class benefits. Indeed, the Settlement equates to a per capita amount of $8.50 per Settlement Class member, a number far exceeding a score of other similar data breach settlements. *See Desue, et al. v. 20/20 Eye Care Network Inc., et al.*, No. 21-cv-61275-RAR (S.D. Fla. Jul. 8, 2023) (approving data breach settlement equating to $0.71/person); *Barr v. Drizly LLC fka Drizly Inc. et al.*, 1:20-cv-11492 (D. Mass Nov. 24, 2021) ($2.84/class member); *Kesner, et al. v. UMass*

*Memorial Health Care Inc.*, No. 2185 CV 01210 (Mass. Sup. Ct. May 25, 2023) ($5.74/class member); *Finn v. Empress Ambulance Service Inc. d/b/a Empress EMS*, No. 7;22-cv-08101 (S.D. N.Y. Nov. 27, 2023) (settlement averaging $3.41/class member); *Everetts v. Personal Touch Holding Corp.*, No. 2:21-cv-02061-JMA-LGD (E.D. N.Y. Jan. 22, 2024) (preliminarily approving settlement awarding approximately $3.98/class member). Value also lies in the injunctive relief.

The trial expense and the use of judicial resources and the Parties' resources would be substantial. Moreover, given the contested liability, any judgment would be the subject of post-trial motions and appeals, prolonging litigation and reducing the value of any recovery. An appeal might seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself. *See Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversal of multimillion dollar judgment obtained after protracted trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478, 485 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d Cir. 1971), rev'd 409 U.S. 363, 366 (1973) ($145 million judgment overturned after years of litigation and appeals). Thus, the Settlement is advantageous to all concerned and well within the range of reasonableness.

### 7.   The Ability of Defendant to Withstand a Greater Judgment

Defendant is a large, profitable, and well-insured company. As such, there are no concerns that it can fund the Settlement, nor are there concerns that it could withstand a greater judgment.

### 8.   The Plan Distribution of the Settlement Fund Is Fair, Reasonable and Equitable

Rule 23(e)(2)(C)(ii) requires courts to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019). The standard for approval of a plan of distribution is the same

as the standard for approving the settlement as a whole: "namely, it must be fair and adequate."

*In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at *8-9 (D. Conn. 2023); *accord Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) (citation omitted); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 343 (S.D.N.Y. 2005). "'As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003) (citation omitted), *aff'd sub nom. WalMart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005). In determining whether a plan of allocation is reasonable, courts give great weight to the opinion of experienced counsel. *Id.* (citing *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011)).

Here, Settlement Class Members were required to return a simple Claim Form plainly specifying the available Settlement Class Member Benefits. The Notice fully described the plan for distribution of the Settlement Fund and supports this factor. See *In re WorldCom, Inc. Sec. Litig.*, No. 02-3288, 2004 WL 2591402, at *12 (S.D.N.Y. Nov. 12, 2004) (requiring claim form was "important in helping to insure that the settlement fund is distributed to class members who deserve to recover from the fund"). Settlement Class Members are eligible to receive their actual out-of-pocket expenses, or they can choose a flat cash payment, subject to pro rata increases or decreases after evaluating all Valid Claims. This provides a fair allocation plan as they can each claim their own respective damages. It is also equitable to them relative to each other as required by Rule 23(e)(2)(D). Notably, no one objects to the allocation plan, or the Settlement at all for that matter, which also supports approval. *See Maley*, 186 F. Supp. 2d at 367 (S.D.N.Y. 2022).

### 9.  Notice to Settlement Class was Sufficient

For class action settlement notice to meet the requirements of due process and Rule 23,

notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985). Here, direct Notice as provided and Settlement Class members were able to get even more information about the Settlement by requesting a Long Form Notice or by visiting the Settlement Website. Settlement Class members also had the opportunity to call a toll-free line for more information about the Settlement and how to make a Claim. Notices returned as undeliverable were re-mailed to a forwarding address, and if no forwarding address was available, research for alternate addresses was performed, a new address located, and the Notice re-mailed, with a 99% delivery rate. Admin. Decl. ¶ 28. Such a comprehensive Notice Program should be approved. *See Phillips Petroleum*, 472 U.S. at 812.

10. **Final Certification of the Settlement Class and Appointment of Class Counsel and the Class Representatives**

The Preliminary Approval Order analyzed the Rule 23(a), (b)(2), and (b)(3) class certification requirements and conditionally certified the Settlement Class for settlement purposes only. DE# 44 at ¶¶ 4-7. Nothing has changed since that order was entered to affect the Court's granting final class certification. As such, for the reasons explained in the Motion for Preliminary Approval, stated in the Court's Preliminary Approval Order, and reiterated in Settlement Class Counsel's declaration, the Settlement Class should be finally certified for Settlement purposes.

The Preliminary Approval Order designated Plaintiff as Class Representative, which should be confirmed for Final Approval. So too should the appointment of Jeff Ostrow; Mason Barney; Gary Mason; Mariya Weekes; Raina Borrelli; and Daniel Srourian of Srourian Law Firm, as Class Counsel pursuant to the Fed. R. Civ. P. 23(g)(1)(A)-(B) factors. Class Counsel expended a great deal of time, effort, and expense investigating, litigating, and resolving this Action. Further,

as set forth in the firm resumes, each attorney from each firm is highly experienced in complex consumer class action litigation. *See* Joint Decl., Exs. 1-3 (firm resumes). It is clear from their track-record of success that Class Counsel are highly skilled and knowledgeable. Class Counsel have used their experience to represent the Settlement Class vigorously.

## VI. The Requested Attorneys' Fees Award is Fair and Reasonable

In Rule 23 class actions, the "attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The reasonableness of a fee is evaluated based on consideration of the six *Goldberger* factors: "(1) counsel's time and labor; (2) the litigation's magnitude and complexity; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 423 (2d Cir. 2010) (citing *Goldberger*, 209 F.3d at 50). In deciding an appropriate fee, the Court must "act as a fiduciary who must serve as a guardian of the rights of absent class members." *Id*. at 419 (quoting *City of Detroit v. Grinnell Corp. ("Grinnell II")*, 560 F.2d 1093, 1099 (2d Cir. 1977); abrogated on other grounds by *Goldberger*, 209 F.3d at 43). The Second Circuit has approved the use of two methods to calculate attorneys' fees: "percentage of the fund" and "lodestar." *Id*. at 417-19.

"Under the percentage of the fund method," which is the trend in this Circuit, "class counsel is awarded a reasonable percentage of the total value of the settlement fund created for the class." *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 384 (S.D.N.Y. 2017) (citing *Goldberger*, 209 F.3d at 47; *McDaniel*, 595 F.3d at 423). The "lodestar method creates 'a disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of the line-item fee audits.'" *In re Colgate-Palmolive Co. ERISA*

*Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014) (quoting *Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). The percentage method, on the other hand, "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation," *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (quoting *In re Lloyd's Am. Tr. Fund Litig.*, No. 96 Civ. 1262 RWS, 2002 WL 31663577, at *74 (S.D.N.Y. Nov. 26, 2002)). As the leading class action treatise explains:

> [T]he common fund fee award, as a contingent fee award, should often (if not always) be higher than counsel's lodestar itself. This is true because the fee reflects both the provision of legal services and the loan to the class of the attorney's resources and services, at the risk of recovering nothing. . . . Given the higher risk of not getting paid, and the loan of the attorney's resources and services to the class, there must be some higher reward when a payday arrives.

*5 Newberg on Class Actions* § 15:73 (5th ed.).

Regardless of the method used, courts typically look to the six "*Goldberger* factors" quoted above. In light of the excellent results obtained for the Settlement Class, Class Counsel's attorneys' fee request of 33.33% of the common fund ($808,333.33) is reasonable as a percentage of the $2,425,000.00 common fund. Furthermore, the reasonableness is confirmed by a lodestar cross-check, if performed.

## A.    The *Goldberger* Factors Considered by Courts in this Circuit Support the Requested Fees Award

### 1.    <u>The time and labor expended by counsel</u>

As detailed in the supporting Joint Declaration of Class Counsel, Class Counsel have expended substantial effort to prosecute this Action and will expend even more time to bring this Action to conclusion. Joint Decl. ¶¶ 30-59. Class Counsel's contemporaneous time records reflect 324 hours of attorney and paralegal time to related to the following tasks: investigating the claims, drafting the pleadings, addressing early motion practice, preparing written litigation discovery and

informal pre-mediation discovery, preparing for and attending mediation, engaging in settlement discussions, drafting the Settlement Agreement, working with the Settlement Administrator, and drafting preliminary and final approval papers. *Id.* Additionally, Class Counsel will spend time preparing for and attending the Final Approval Hearing and working with the Settlement Administrator to ensure the Settlement is properly implemented and Settlement Class Members receive their Settlement Class Member Benefits. *Id.*

### 2.  The magnitude and complexities of the litigation

Although nearly all class actions involve a high level of risk, expense, and complexity, such risk, expense, and complexity apply even more so to data breach litigation, undergirding the strong judicial policy favoring amicable resolutions. *In re Hudson's Bay Co. Data Breach Incident Consumer Litig.*, No. 18-cv-8472 (PKC), 2022 WL 2063864, at *19 (S.D.N.Y. June 8, 2022) ("The magnitude and complexity of this case are reflected in the volume of affected payment cards and the technical details of how malware breached the retailers point-of-payment system and payment-card data made its way to the so-called "dark web."); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) ("data breach class actions are among the riskiest and uncertain of all class action litigation due to the absence of direct precedent certifying data breach cases as class actions."); *see also Gaston v. Fabfitfun, Inc.*, No. 2:20-cv-09534-RGK-E, 2021 WL 6496734, at *7 (C.D. Cal. Dec. 9, 2021) (same)*; In re Sonic Corp. Customer Data Sec. Breach Litig.,* No. 1:17-md- 2807, 2019 WL 3773737, at *14 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky."). This case involves largely untested claims and the law is ever changing in this space. It involves over 280,000 individuals. This case is large and complex. Joint Decl. ¶ 27.

### 3.  The risk of litigation

This Action was undertaken and pursued on a contingent basis and represented a significant

financial risk for Class Counsel. Joint Decl. ¶ 36. As Judge Posner of the Seventh Circuit Court of Appeals observed:

> A contingent fee must be higher than the fee for the same legal services as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders, but also for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of a conventional loan.

Posner, *Economic Analysis of Law*, 534, 567 (4th ed. 1992) (emphasis added). Risk of nonpayment is a relevant consideration in determining the reasonableness of a fee award. *In re Frontier Commc'ns Corp.*, No. 3:17-cv-01617-VAB, 2022 WL 4080324, at *44 (D. Conn. May 20, 2022) ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award.") (quoting *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400 (CM) (PED), 2010 WL 4537550, at *79 (S.D.N.Y. Nov. 8, 2020)). If this matter proceeded in litigation, Plaintiffs and thus Class Counsel would bear considerable, additional risks, including the uncertainty of contested class certification and the possibility of an interlocutory appeal pursuant to Fed. R. Civ. P. 23(f), dispositive motions, and potential appeals, not to mention trial. Joint Decl. ¶ 28. This factor favors awarding 33.33% of the Settlement Fund as attorneys' fees.

### 4. **The quality of representation**

As set forth Class Counsel's firm's resumes, Class Counsel has decades of experience prosecuting consumer class actions, including highly specialized data breach litigation. *Id.*, Ex. 1-3. Class Counsel has been repeatedly recognized by courts as data breach specialists and for their work in prosecuting data breach class actions. *Id.* ¶ 20. Class Counsel's decades of combined experience led directly to the excellent result achieved on behalf of the Settlement Class here and supports the requested attorneys' fee award. *Id.* ¶ 19.

### 5.  The requested fee in relation to the settlement

Compensation of 33.33% of the Settlement Fund is consistent with the proportion of common funds awarded as fees in other class action settlements within the Second Circuit. *See Menkes v. Stolt-Nielsen S.A.*, No. 3:03-CV-00409 (DJS), 2011 WL 13234815, at *4-5 (D. Conn. Jan. 25, 2011) (awarding one-third of common fund); *Kiefer v. Moran Foods, LLC*, No. 12-cv-756 (WGY), 2014 WL 3882504, at *51 (D. Conn. Aug. 5, 2014) (one-third of common fund "is reasonable and 'consistent with the norms of class litigation in this circuit.'" (quoting *Aros v. United Rentals, Inc.*, No. 3:10-cv-73 (JCH), 2012 WL 3060470, at *18 (D. Conn. July 26, 2012)); *In re Priceline.com, Inc., Sec. Litig.*, No. 3:00-CV-1884 (AVC), 2007 WL 2115592, at *5 (D. Conn. July 20, 2007) (listing Second Circuit cases that approved between 25–33 1/3% of the settlement fund in attorneys' fee). *See also Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-CV-8405 (CM) & 14-CV-8714 (CM), 2015 WL 10847814, at *16-17 n.11 (S.D.N.Y. Sept. 9, 2015) (collecting cases with fee awards of approximately 30–33.33% of the total settlement value); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million . . . .").[5]

### 6.  Public Policy Considerations

Public policy considerations also "favor[] a significant award of attorneys' fees above what Class Counsel would have charged on an hourly fee basis," *In re Capital One Consumer Data*

---

[5] A 33.33% percentage-of-recovery award is consistent with various studies that have been performed over the decades: "[E]mpirical studies show that, regardless of whether the percentage method or the lodestar method is used, fee awards in the class actions average around one-third of the recovery." 4 *Newberg on Class Actions* § 14:6 (4th ed.). In fact, one decision that reviewed 289 class actions settlements found an "average attorney's fee percentage [of] 31.31%" and a median value "that turns out to be of one-third." *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001).

*Security Breach Litig.*, No. 1:19-md-2915 (AJT/JFA), 2022 WL 17176495, at *5 (E.D. Va. Nov. 17, 2022), because attorneys should be incentivized to bring common fund cases like this Action where the alternative (thousands of individual small-dollar claims) would not justify the expense of separate litigation. *See id.* ("The class action device, when not abused, serves an important public interest in securing remedies for consumers who, for economic and practical reasons, would be unable to recover on an individual basis."). "There is also commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Goldberger*, 209 F.3d at 51. Class Counsel's fees "should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Colgate-Palmolive*, 36 F. Supp. 3d at 352. The Settlement and attorneys' fees requested do not raise serious public policy concerns, and no Settlement Class Members have presently objected to the requested fee. On balance, public policy also supports approval of the requested award.

### B.    A Lodestar Cross-Check Confirms the Fee Requested Is Reasonable

Consistent with *Goldberger*, courts applying the percentage of the fund method may also conduct a "cross-check" by calculating counsel's lodestar (multiplying hours reasonably expended against a reasonable hourly rate) and applying an appropriate multiplier. *Id.*

Class Counsel's lodestar is $225,129.00, reflecting 342.3 hours of attorney and paralegal time. Joint Decl. ¶¶ 32, 42, 50, 57.[6] Awarding the requested fee of $808,333.33 results in a multiplier of 3.59, *id.* ¶ 33, which is consistent with lodestar multipliers awarded in this Circuit.

---

[6] This lodestar calculation includes the hours expended by attorneys and paralegals with the Lead Counsel firms—Kopelowitz Ostrow P.A., Siri & Glimstad LLP, and Mason LLP. Joint Decl. ¶ 34. Additional time expended by other firms representing Plaintiffs could be considered and would have added many more hours and resulted in a higher lodestar and lower lodestar multiplier. *Id.*

Courts routinely award fees where the percentage of recovery method leads to a lodestar multiplier between 3 and 4.5. *See Wal-Mart Stores*, 396 F.3d at 123; *see also Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-cv-00738-RNC, 2014 WL 3778211, at *7 (D. Conn. July 31, 2014) (collecting cases that have approved awards with a lodestar multiplier of up to eight times the lodestar); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (collecting cases); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623-24 (S.D.N.Y 2012) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar.")

### C.    Class Counsel's Costs Are Reasonable and Should Be Reimbursed

Class Counsel's efforts have resulted in substantial common benefits to the Settlement Class.  In doing so, Class Counsel incurred out-of-pocket expenses in the aggregate amount of $9,907.89 for filing and other court fees, mediation costs, and necessary travel costs. *See* Joint Decl. at ¶ 35.  Under Federal Rule of Civil Procedure 23(h), the court may also award "nontaxable costs that are authorized by law or by the parties' agreement." These costs are reasonable in light of the nature of the action and the tasks that needed to be performed.  *See, e.g., Kiefer*, 2014 WL 38882504, at *55  (awarding reimbursement of litigation expenses that included court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, expert fees, and Plaintiff's share of mediation fees).

### D.    The Requested Service Awards Should Be Approved

Plaintiffs respectfully request approval of $2,000.00 Service Awards to each to the Class Representatives. Service awards to representative plaintiffs in class action cases "compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." *Simerlein v. Toyota Motor Corp.*,  No. 3:17-cv-1091 (VAB), 2019 WL 96742, at *76 (D. Conn. June 10, 2019) (quoting *Dornberger v. Metro.*

*Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001)). These awards are designed to reimburse representative plaintiffs, who "take on a variety of risks and tasks when they commence representative actions, such as complying with discovery requests and often must appear as witnesses in the action." *Id*. (quoting *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010)). "Courts in this Circuit frequently approve incentive awards of various amounts in many types of class actions, with determinations of whether the proposed amounts are appropriate being based, somewhat, on assessments of the burdens a representative plaintiff took on by participating in the case." *Kemp-DeLisser v. St. Francis Hosp. & Med. Ctr.*, No. 15-cv-1113 (VAB), 2016 WL 6542707, at *18 (D. Conn. Nov. 3, 2016) (collecting cases). The $2,000.00 Service Awards sought by Plaintiffs fall near the low end of the typical service awards approved by courts in this Circuit. *McLaughlin v. IDT Energy*, No. 14-cv-417 (ENV) (RML), 2018 WL 3642627, at *20 (E.D.N.Y. July 30, 2018) ("Courts in this circuit regularly approve service awards, ranging from as low as $1,000 to as high as $25,000, in consumer class action settlements; generally, however, award between $1,000 and $10,000 are more typical.") (collecting cases).

Here, Plaintiffs agreed to serve as Class Representatives and have been actively involved in the Action. Joint Decl. ¶¶ 60-61. Plaintiffs pursued the interests of the Settlement Class by undertaking the responsibilities attendant to serving as class representatives, including, without limitation, periodically conferring with Class Counsel, providing relevant documents and information, reviewing pleadings and other documents in the case, and discussing and approving the Settlement. *Id*. The information they provided Class Counsel was critical in determining the legal claims to be asserted and the scope of damages alleged. Accordingly, given Plaintiffs' time and efforts in supporting the litigation, combined with the risks and burdens of serving as Class Representatives, they should each be granted a $2,000.00 Service Award.

## VII.    CONCLUSION

For all the foregoing reasons, the Court should grant Plaintiffs' Unopposed Motion for Final Approval of this Settlement and Application for Attorneys' Fees, Costs, and Service awards.

A proposed Final Approval Order is attached for the Court's convenience as ***Exhibit D***.

Dated: September 27, 2024                    Respectfully submitted,

*/s/ Jeff Ostrow*
Jeff Ostrow*
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 332-4200
ostrow@kolawyers.com

Oren Faircloth, CT Bar #438105
Mason A. Barney*
Tyler J. Bean*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Telephone: (212) 532-1091
ofaircloth@sirillp.com
mbarney@sirillp.com
tbean@sirillp.com

Gary E. Mason*
Danielle L. Perry*
Lisa A. White*
**MASON LLP**
5335 Wisconsin Avenue, NW, Suite 640
Washington, DC 20015
Telephone: (202) 429-2290
gmason@masonllp.com
dperry@masonllp.com
lwhite@masonllp.com

Raina Borrelli*
**TURKE & STRAUSS LLP**
613 Williamson St., Suite 201
Madison, Wisconsin 53703
Telephone: (608) 237-1775
raina@turkestrauss.com

Mariya Weekes*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2nd Floor
Coral Gables, Florida 33134
Telephone: (786) 879-8200
mweekes@milberg.com

Daniel Srourian*
**SROURIAN LAW FIRM, P.C.**
3435 Wilshire Blvd., Suite 1710
Los Angeles, California 90010
Telephone: (213) 474-3800
Email: daniel@slfla.com

*Pro hac vice*

*Class Counsel*

27